UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRAVIN PATEL, PRITI PATEL,
RITI PATEL, and KRUTI PATEL,

        Plaintiffs,

v.

CHANDRAKANT D. BHAKTA,
JYOTSNA BHAKTA, and
MAYUR BHAKTA,

        Defendants.

Case No. 13-cv-14099
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

---

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [12]**

---

Plaintiff Pravin Patel and Defendant Chandrakant ("CD") Bhakta were close friends and business partners for many years. They created Motor City Hospitality, LLC ("the Company") for the purpose of purchasing the Holiday Inn Express in Detroit, Michigan ("the Hotel"). This litigation concerns the breakup of their friendship and the disentanglement of their business interests, primarily relating to the sale of the Hotel. Pravin Patel and his daughters, Priti, Riti, and Kruti Patel, filed a nine-count complaint against CD Bhakta and his son and daughter, Mayur and Jyotsna Bhakta, alleging breach of contract and breach of fiduciary duty, among other claims. (Dkt. 1.) CD Bhakta filed a counterclaim against Pravin Patel, alleging breach of contract. (Dkt. 5.) This Court has jurisdiction based on the parties' diversity of citizenship. *See* 28 U.S.C. § 1332(a).

Although discovery had barely begun, Defendants filed a motion for summary judgment on all of Plaintiffs' claims and on CD Bhakta's counterclaim. (Dkt. 12.) Most are not appropriate for summary judgment. But the Court finds as a matter of law that Jyotsna and Mayur Bhakta

were not members of the Company and Jyotsna Bhakta was not a manager of the Company. Summary judgment is therefore granted to Jyotsna Bhakta on Counts I, II, V, VI, VII, and VIII, and to Mayur Bhakta on Counts V and VIII of the Complaint. The Court also grants summary judgment to CD Bhakta on the Patels' claim for conversion in Count III. Summary judgment is denied on all other counts of the Complaint and on CD Bhakta's counterclaim. Defendants' Motion for Summary Judgment (Dkt. 12) is therefore DENIED IN PART AND GRANTED IN PART.

## I.  FACTS

The following facts are undisputed unless disagreement is indicated. Additional disputed facts are discussed in the analysis.

Motor City Hospitality, LLC, was incorporated on August 29, 2007. (Mot. Ex. 9, Articles of Organization; Dkt. 13, Resp. at 1.) Plaintiff Pravin Patel and Defendant CD Bhakta each held a fifty percent membership interest in the Company. (Mot. Ex. 1, CD Bhakta Aff. ¶ 5; Resp. Ex. B, Pravin Patel Aff. ¶ 5.) The Company purchased a Holiday Inn Express in Detroit. (*See* CD Bhakta Aff. ¶ 3; Pravin Patel Aff. ¶4.)

The parties disagree about who was responsible for the operation and management of the Company and the Hotel. (Mot. Br. at 1–2; Resp. at 2.) Neither party has provided the Court a copy of the Company's operating agreement, although one of Plaintiffs' claims is for breach of that agreement.

In 2007, CD Bhakta assigned a ten percent interest in the Company to Defendant Jyotsna Bhakta and a five percent interest to Defendant Mayur Bhakta. (Mot. Br. at 2 n.2; Pravin Patel Aff. ¶ 6.) In 2008, Pravin Patel assigned a five percent interest to each of his three daughters: Plaintiffs Riti, Kruti, and Priti Patel. (CD Bhakta Aff. ¶¶ 8–9; Pravin Patel Aff. ¶ 9.) The parties

disagree about whether the assignees became members of the Company. (*See* Mot. Br. at 2; Resp. at 2.) The Company's 2008 to 2012 tax returns identified all four Patels and all three Bhaktas as partners in the Company. (*See* Resp. Ex. B2 at Pg ID 378, 380, 382, 384, 386, 388, 390; Resp. Ex. B3 at Pg ID 403–404; Resp. Ex. B4 at Pg ID 503; Resp. Ex. B5 at Pg ID 523, 525, 527, 529, 531, 533, 535; Resp. Ex. B6 at Pg ID 554, 556, 558, 560, 562, 564, 566.)

On January 7, 2013, CD Bhakta made two alternative offers: to purchase the Patel family's fifty percent share of the Company for $750,000, or to sell the Bhakta family's fifty percent share of the Company to the Patel family for $750,000. (Mot. Ex. 1E; Resp. Ex. B11.) On January 14, 2013, Pravin Patel wrote: "The purpose of this letter is to let you know that I accept the proposal on the basis that you will purchase my family's current ownership interest in Motor City Hospitality LLC as provided in your proposal. . . . Please have papers prepared and submit them to me so that we can formalize this agreement and complete the share sale transaction and transfer of shares." (Mot. Ex. 1F; Resp. Ex. B12.) Within days of Pravin Patel's letter, Pravin Patel communicated to CD Bhakta either (according to Defendants) the desire to "reverse" acceptance of the offer and instead purchase the Bhakta family shares; or (according to Plaintiffs) surprise that CD Bhakta believed that the sale of the Patel family share was completed by Pravin Patel's letter. (*See* Pravin Patel Aff. ¶¶ 23, 28; CD Bhakta Aff. ¶ 30.)

On January 18, 2013, the Company entered an agreement to sell the Hotel for $12,500,000. (Mot. Br. at 5; Resp. Ex. C, Sale-Purchase Agreement at Pg ID 613–14.) Pravin Patel contends that he knew nothing about these negotiations at the time they were ongoing. (Pravin Patel Aff. ¶ 30; Mot. Ex. 13.) But several months later, on July 19, 2013, each of the Patels ratified and approved the sale of the Hotel on the condition that the sale proceeds would be placed in escrow. (Mot. at Ex. 1G; Resp. at 4.)

3

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

Where Defendants do not bear the burden of persuasion at trial, they may discharge their initial summary-judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support [Plaintiffs'] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If Defendants do so, Plaintiffs "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec.*, 475 U.S. at 587. The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of Plaintiffs' claims to a jury, or whether the evidence is so one-sided that Defendants must prevail as a matter of law. *Anderson*, 477 U.S. at 252.

Where Defendants bear the burden of persuasion, such as on their counterclaim for declaratory judgment, their showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for [him]." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)); *see also Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) ("[I]f the moving party also bears the

4

burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" (quoting 11 James William Moore et al., *Moore's Federal Practice* § 56.13[1], at 56–138 (3d ed. 2000))).

## III. ANALYSIS

Plaintiffs allege the following claims against all three Defendants: violation of a provision of the Michigan Limited Liability Company Act (Mich. Comp. Laws § 450.4515) that prohibits "willfully unfair and oppressive conduct" by one LLC member against another (Count I), breach of fiduciary duty (Count II), breach of the Company's operating agreement (Count V), violation of a provision of the Michigan Limited Liability Act (Mich. Comp. Laws § 450.4503) that gives LLC members the right to an accounting (Count VI); common-law accounting (Count VII), and unjust enrichment (Count VIII). Plaintiffs also seek declaratory judgment to obtain the release of funds held in escrow (Count IX). Plaintiffs allege two claims against CD Bhakta alone: conversion (Count III) and breach of a loan agreement (Count IV). Defendants seek summary judgment in their favor on all of Plaintiffs' claims and on CD Bhakta's counterclaim against Pravin Patel for breach of contract.

### A. Standing of Riti, Priti, and Kruti Patel

Defendants argue that, as a matter of law, three of the four Plaintiffs: Riti, Priti, and Kruti Patel ("the Patel daughters"), lack standing to maintain Counts I, V, VI, and VII because they are not members of the Company. (Mot. Br. at 7–10.) Plaintiffs have the burden to establish standing, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that the party invoking federal jurisdiction bears the burden of establishing standing), so to survive summary judgment, Plaintiffs must identify specific facts showing that there are issues of material fact for

trial regarding the Patel daughters' standing, *see Matsushita Elec.*, 475 U.S. at 587. The Court finds that a reasonable jury could believe that Defendants are equitably estopped from challenging the Patel daughters' standing, so summary judgment must be denied on this basis.

The Company was formed under Michigan's Limited Liability Company Act. (Mot. Ex. 9, Articles of Organization.) The Act defines a member as "a person who has been admitted to a limited liability company as provided in section 501." Mich. Comp. Laws § 450.4102(p). That section provides that a person may be admitted as a member of a limited liability company after its formation by assignment of a membership interest as provided in section 506. Mich. Comp. Laws § 450.4501(2).[1] Section 506 provides: "Unless otherwise provided in an operating agreement, an assignee of a membership interest in a limited liability company that has more than 1 member may become a member only upon a unanimous vote of the members entitled to vote." Mich. Comp. Laws § 450.4506(1). Defendants argue that the Patel daughters could not have become members under this provision because there was never a vote of the members. (Mot. Br. at 10; CD Bhakta Aff. ¶ 10.) At the hearing, counsel for Defendants stated that the Company's operating agreement—which neither side has provided to the Court—does not provide any other means to become a member.

Plaintiffs do not dispute that the operating agreement does not provide any other means to admit new members. Nor did they assert that there was a vote to admit the Patel daughters. Instead, Plaintiffs argued at the hearing that a formal vote was unnecessary because there was consent between "two long-time friends and partners." But the size and collegiality of the

---

[1] Section 501 also provides that a person may become a member at the formation of the Company by various means, or, after the formation of the company, by acquiring a membership interest directly from the company or as the result of a merger or conversion. The undisputed facts establish that the Patel daughters were not members at the formation of the Company and that any interest was acquired later, from their father.

Company does not alter the clear requirement of the statute. Many LLCs governed by Michigan's LLC Act are undoubtedly small businesses like this one. Absent evidence that both members formally agreed to admit new members to the LLC, the Court cannot find that the statute's requirement was met. Viewing the evidence in the light most favorable to Plaintiffs, a reasonable finder of fact could not conclude that a vote to admit the Patel daughters was taken.

Nonetheless, it may be that Defendants are estopped from denying the Patel daughters' membership because Defendants treated them and held them out as members. Plaintiffs cite *Huntington National Bank v. Big Sky Development Flint, LLC*, No. 10-10346, 2010 WL 2632021, at *6 (E.D. Mich. June 29, 2010), in support of this argument. (Resp. at 6–9.) In *Huntington National Bank*, the defendant limited liability companies defaulted on a loan and the bank sued. 2010 WL 2632021 at *1. After the parties agreed to appoint a receiver, Barry Cohen filed a motion to intervene, claiming to be a member of the defendant LLCs. *Id.* The parties opposed his motion, arguing he was not a member of the LLCs because his membership was never approved by unanimous vote as required by both Michigan law and the companies' operating agreements. *Id.* at *6. The Court found that "[w]ithout some evidence of consent by the other members, Cohen's mere assumption is an insufficient basis" on which to find that Cohen was a member of the LLCs. *Id.* But the Court went on to find that Cohen asserted sufficient facts to establish that the LLCs should be estopped from asserting that he was not a member. *Id.* at *7.

"A party can rely on equitable estoppel when '(1) a party by representation, admissions or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on this belief, and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts.'" *Id.* (quoting *Hughes v. Almena Township*, 284 Mich. App. 50, 78, 771 N.W.2d 453 (2009)). In *Huntington National Bank*, the court found that

7

Cohen was led to believe he was a member because he was invited to annual member meetings, given proxy voting forms, consistently provided with periodic accounting statements, and provided with financial information upon request, where the companies' operating agreements stated that "[n]o Transferee shall have any right to vote on or participate in the affairs of the Company, to receive any company information or an accounting of Company funds or affairs unless or until the Transferee shall qualify and be admitted as a Member in accordance with Section 4.8." *Id.* The court noted that "[h]ad he been aware that he had not been admitted as a member, Cohen could have continued to seek membership" in the LLCs, and that he would be prejudiced if as a non-member he was not allowed to vote on the stipulated order of receivership. *Id.*

Plaintiffs argue that this case is similar because the Patel daughters were held out as members in tax filings and in negotiations with a franchisor and a lender, the Board of Director minutes said "All done with transfer of ownership changes," "Kruti and Priti Patel were active participants in internal Company decisions, including extensive hotel renovations and the discussion to transition the Hotel to owner-management," they "periodically received the daily management reports of the Hotel, and certain accounting, financial, and tax information provided by the Bhaktas," and "when the Company needed additional capital to cover operational expenses, they were invited to provide a cash infusion to the Company." (Resp. at 7–9.)

But Defendants point out several distinctions: the court in *Huntington National Bank* estopped the LLCs, but the Company is not a party in this case; "none of Riti, Priti or Kruti Patel even claim to have been invited or to have participated in any meetings of the members, ever voted or afforded the opportunity to vote on any matter, or to have been consistently provided with financial information (indeed, in Count V Plaintiffs complain they were not provided with

financial information)"; and the Patel daughters have not submitted affidavits indicating they believed they were members and would be prejudiced otherwise. (Dkt. 18, Reply at 2.) Defendants also argue that treating someone as a partner for tax purposes "is independent of the rights, if any, of the individual under state corporate/company law," citing Revenue Ruling 77-177 and *Evans Commissioner of Internal Revenue*, 447 F. 2d 547 (4th Cir. 1971). (*Id.* at 3.) And Defendants point to a May 2012 email Pravin Patel wrote to the Company's accountant, stating, "Chandrakant and myself are 50% partner in Motor City LLC . . . ." (Resp. Ex. 7 at Pg ID 572.)

Plaintiffs have not shown that equitable estoppel should apply as a matter of law in this case as in *Huntington National Bank*, but they have made a sufficient showing to create a disputed issue of material fact. A reasonable finder of fact could accept their equitable estoppel defense to Defendants' standing defense. That is all that is required to deny summary judgment on this issue. Riti, Priti, and Kruti Patel may proceed on their claims.

### B.  Jyotsna and Mayur Bhakta

Defendants argue that Jyotsna and Mayur Bhakta also never became members of the Company. They submit affidavits from CD, Jyotsna, and Mayur Bhakta stating that there was never a vote to admit them as members. (CD Bhakta Aff. ¶ 10; Mot. Ex. 6, Jyotsna Bhakta Aff. ¶ 2; Mot. Ex. 7, Mayur Bhakta Aff. ¶ 2.) Plaintiffs have not submitted any evidence that there was a vote. They have not provided the Company's operating agreement to establish that there was any other path to membership. Plaintiffs point out that Jyotsna and Mayur were listed as members in tax filings, were provided with accounting information that referenced their membership capital, and were actively engaged in management and negotiations (*id.* at 12–13), but they do not argue that Defendants should be estopped from denying that Jyotsna and Mayur are members. Plaintiffs have not met their burden to "come forward with specific facts showing

9

that there is a genuine issue for trial" regarding the membership of Jyotsna and Mayur Bhakta. *See Matsushita Elec.*, 475 U.S. at 587. Defendants therefore prevail as a matter of law on this issue: Jyotsna and Mayur Bhakta were not members of the Company.

Defendants further argue that Jyotsna and Mayur Bhakta were not managers of the Company. Jyotsna and Mayur submitted affidavits denying that they have ever been managers of the Company. (Jyotsna Bhakta Aff. ¶ 3; Mayur Bhakta Aff. ¶ 3.) In response, Pravin Patel submitted an affidavit stating that CD, Mayur, and Jyotsna Bhakta "were exclusively responsible for managing the finance and accounting functions of the Company." (Pravin Patel Aff. ¶¶ 10, 12.) Defendants argue that this "broad, conclusory statement . . . lacks factual support." (Reply at 4.) Plaintiffs attached to their response a series of emails that show "Mayur was actively engaged in the management and negotiations on the Company's behalf." (Resp. at 12.) This is sufficient to create a fact issue regarding Mayur Bhakta's involvement in management of the Company.[2]

But the Court agrees with Defendants regarding Jyotsna Bhakta. Absent similar evidence to support Plaintiffs' assertion that Jyotsna was a manager, Plaintiffs have not met their burden to create a fact issue on this point. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment."). Defendants therefore prevail as a matter of law on this issue: Jyotsna Bhakta was not a manager of the Company.

### C. Count I—Mich. Comp. Laws § 450.4515

Count I of the Complaint is brought under a provision of the Michigan Limited Liability Company Act that states:

---

[2] Although Defendants also assert that "management was as a matter of law vested solely in the members" (Mot. Br. at 12), they have not provided the Court with the Company's operating agreement or any other evidence to support this statement.

> A member of a limited liability company may bring an action in the circuit court of the county in which the limited liability company's principal place of business or registered office is located to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member.

Mich. Comp. Laws § 450.4515(1). (*See* Compl. ¶¶ 44–47.) Defendants argue, without citation to case law, that this cause of action may be brought only in state circuit court. (Mot. Br. at 10–11.)

Plaintiffs cite case law that makes it clear that Defendants are wrong. In *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 933 (U.S. 2013), the Sixth Circuit reversed a district court's determination that the Public Utilities Commission of Ohio had exclusive jurisdiction over certain state-law claims. The Court reasoned that "[t]he jurisdiction of federal courts is defined by Article III of the United States Constitution and by acts of Congress," and "a state cannot defeat federal jurisdiction over a matter by limiting jurisdiction to a specialized state court, . . . even if the cause of action was created by state statute." *Williams*, 681 F. 3d at 798 (citing *Marshall v. Marshall*, 547 U.S. 293, 314 (2006)). And a federal court in the Eastern District of Virginia reached the same conclusion regarding the Michigan statute at issue here, noting that the defendant's argument "would require the Court to hold that the Michigan legislature can restrict the diversity jurisdiction of the federal courts." *Trident-Brambleton, L.L.C. v. PPR No. 1, L.L.C.*, No. 05CV1423, 2006 WL 1880986, at *2 n.6 (E.D. Va. July 5, 2006). The court also noted that "the statute simply provides that a suit 'may' be brought in such circuit court, and does not explicitly provide that such court has exclusive jurisdiction over suits under that section." *Id.* The Court agrees with the *Trident-Brambleton* court's analysis of the statute. Plaintiffs are correct that this Court has jurisdiction to hear their claim under Mich. Comp. Laws § 450.4515.

Defendants also argue that Jyotsna and Mayur Bhakta are not proper defendants under this statute because they are not managers or members of the Company. (*Id.* at 11.) The Court has found that Jyotsna and Mayur Bhakta are not members of the Company and Jyotsna Bhakta is not a manager, but whether Mayur Bhakta is a manager of the Company is a disputed fact issue. Summary judgment is granted on Count I only as to Jyotsna Bhakta. Plaintiffs may proceed on Count I against CD Bhakta and Mayur Bhakta.

### D. Count II—Fiduciary Duty

Count II states: "The Bhaktas owe a fiduciary duty to the Patels because the Patels are members of the Company and because the Bhaktas were entrusted with the day-to-day operations of the Hotel which is the sole asset of the Company." (Compl. ¶ 50.) Defendants argue that this breach of fiduciary duty claim fails as to Jyotsna and Mayur Bhakta because they were not members or managers so did not owe Plaintiffs any fiduciary duty. (Mot. Br. at 11–12.) As discussed above, whether Mayur Bhakta is a manager of the Company is a disputed fact issue, so this claim may proceed against him.

But the Court has found that Jyotsna Bhakta was not a member or manager of the Company. Plaintiffs have not come forward with any facts that could establish that Jyotsna Bhakta owed them a fiduciary duty. *See Teadt v. Lutheran Church Missouri Synod*, 603 N.W.2d 816, 823 (Mich. Ct. App. 1999) ("[A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another."). Jyotsna Bhakta is entitled to summary judgment on Count II.

### E. Count III—Conversion

The third count of the Complaint is a claim against CD Bhakta for conversion of certain money that allegedly belonged to Pravin Patel. (Compl. ¶¶ 53–59.) To support an action for

conversion of money under Michigan law, "[t]he defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship." *Lawsuit Fin., L.L.C. v. Curry*, 683 N.W.2d 233, 240 (Mich. Ct. App. 2004) (internal quotation marks omitted). Because Pravin Patel acknowledges that the money allegedly converted was in a "joint bank account I shared with C.D. Bhakta for business purposes," the Court finds as a matter of law that Plaintiffs cannot state a claim for conversion.

In affidavits and exhibits submitted for this motion, CD Bhakta and Pravin Patel present their versions of the events that gave rise to this claim. CD Bhakta states in his affidavit that the money at issue was "not the property of the Company or Pravin Patel, but [] the proceeds of the refinance of property owned by Ganesh, Inc., a Texas corporation, and held in an account in Ganesh, Inc.'s name." (CD Bhakta Aff. ¶ 18.) He says the money was "voluntarily loaned to me by Ganesh, Inc. with the consent of Pravin Patel, who was also an officer of Ganesh, Inc." (*Id.* at ¶ 19.) In support of CD Bhakta's account, Defendants attach to their motion two emails from Pravin Patel to CD Bhakta suggesting that Pravin Patel was fully aware that CD Bhakta had used the money in question. On January 31, 2011, Pravin Patel wrote: "the money you used from my account is ok with lots of luck. But interest will not be reported as I do not have sources to write off. I am sure you have plan to give the money back!" (Mot. Ex. 14B.) And on February 10, 2011, he wrote: "If you are planning to give me interest for the money you used buying properties Make sure I do not prefer having interest to be reported and much appreciate having principal back sooner as I am obliged to pay off my debt as well . . . ." (Mot. Ex. 14A.)

Pravin Patel states in his affidavit: "I designated $1,167,975.50 of my personal money for use by the Company as capital for operations and/or other needs." (Pravin Patel Aff. ¶ 34.) He says, "[t]he money was made up of, in part, money I received from a refinancing of Ganesh, Inc.,

a hospitality business jointly owned by C.D. Bhakta and me," and the entire sum "was held in a joint bank account I shared with C.D. Bhakta for business purposes." (*Id.* ¶¶ 35–36.) According to Pravin Patel, CD Bhakta "admitted his misuse of my money and offered to repay the money with interest, suggesting he would treat his misappropriation as a personal loan," but "has not provided . . . definitive terms or conditions of the loan" and has made only "one partial loan payment for $250,000 on June 11, 2012." (*Id.* ¶¶ 40–41.)

In support of Pravin Patel's account, Plaintiffs attached to their response brief a copy of a handwritten letter addressed to "Pravin," signed "Chandrakant," with the subject line "Ref: Your email on 1/14/2011." (Resp. Ex. B16.) The letter states in part:

> After Motel 6 financed, I told you at least 3-4 times including February 2010, can I send your money. You said "no." . . . You also said at least couple of times "you should use this fund, if any short fall for Lake Charles Holiday Inn project. . . . I discussed with you in October 2010 about the Property Note. I offered to you to become a partner in San Antonio property but you do not want to become a partner. You made a wise decision & I was stuck. . . . To go backward, I have to lo[]se 125K. So I decided to go forward and I used your "FULL FUND" although you said you can use "Partial." I do not have a other choice. . . . Pravin, I can pay you off in full with interest at least put on trust me. . . . You have a complete breakdown sheet, which I faxed to you on 02/22/2010. $1,167,975.50 + interest. [Interest you can calculate or with your accountant.] I purchased the Note on 10/20/2010.

(Resp. Ex. B16 at 1.) The letter then offers three alternatives "for your consideration": (1) to transfer a share of the property "so you can get your money faster"; (2) "promissory note & lien on the property so your money [] will be safe"; or (3) "I can start $5,000 to $7,000 per  month payment from April 2011 so at least it will cover up some interest. Remaining we will settle at pay off." (*Id.* at 3.) The letter continues, in part:

> I will put one of the property in market after I will get possession of the property so I can pay you off early. . . . I also f[ee]l guilty because I did not inform to you in timely manners "how much money I used to buy a note." It happened due to over trust each other.

14

(*Id.* at 4.) The following exhibits are also attached to Plaintiffs' response brief: the "complete breakdown sheet" faxed on February 22, 2010, which shows two columns labeled Pravin Patel and CD Bhakta, each totaling $1,167,975.50 (Resp. Ex. B15); a check for $250,000 from CD Bhakta to Pravin Patel dated June 11, 2012 (Resp. Ex. B17); and a June 20, 2012 email from Pravin Patel to CD Bhakta acknowledging receipt of the check as "Loan payment" (Resp. Ex. B18).

Defendants argue that Count III fails as a matter of law for several reasons. First, they argue that Pravin Patel lacks standing to bring a claim for conversion because he was not the owner of the funds allegedly converted, citing CD Bhakta's affidavit that the funds belonged to Ganesh, Inc. (Mot. Br. at 13.) But Pravin Patel calls the funds his "personal money" (Pravin Patel Aff. ¶ 34), the letter apparently written by CD Bhakta to Pravin Patel repeatedly refers to "your money" (Resp. Ex. B16 at 1, 3), and the check remitted as partial payment on the loan was written to  Pravin Patel, not Ganesh, Inc. (Resp. Ex. B17). Whether Pravin Patel was the owner of the funds allegedly converted is a disputed fact issue that cannot be decided on summary judgment.

Defendants next argue that "there is no genuine dispute that the Funds were loaned to C.D. Bhakta with the consent of Pravin Patel." (Mot. Br. at 13.) The picture that emerges from the affidavits and documents is more complicated. Reading the evidence in the light most favorable to Plaintiffs, it appears that CD Bhakta initially had possession of the funds with Pravin Patel's consent, as a result of shared business dealings, but used at least some of the funds without consent or partially without consent, and Pravin Patel afterward consented to consider that appropriation a loan.

15

Defendants cite *Lawsuit Fin., L.L.C. v. Curry*, 683 N.W.2d 233, to support their argument that these facts do not support a claim for conversion. The conversion claim in that case was brought against a law firm for failing to disburse litigation proceeds from a personal injury lawsuit. *Curry*, 683 N.W.2d at 235. The court found that plaintiff failed to state a claim for common-law conversion because it failed to allege that the law firm's "initial exercise of domain over the property was in fact wrongful." *Id.* at 240–41. Similarly, in another case, the Michigan Court of Appeals found the trial court did not err by finding after a bench trial that the plaintiff failed to establish conversion where "plaintiff did not consent to [defendant] failing to ever pay the owed funds; however, [defendant] obtained the funds with plaintiff's consent to the creation of a debtor-creditor relationship." *Windrush Inc. v. Vanpopering*, No. 315958, 2014 WL 2810428 (Mich. Ct. App. June 19, 2014). The situation here is similar: the undisputed facts establish that the money was held in a business account to which CD Bhakta rightfully had access. The dispute arose from CD Bhakta's failure to repay the money following the parties' consent to the creation of a debtor-creditor relationship, which does not establish a claim for conversion.

Plaintiffs argue that "one can sue for the conversion of funds that were delivered to the defendant for a specified purpose, but that the defendant diverted to his or her own use." (Resp. at 13 (quoting *Tooling Mfg. & Technologies Ass'n v. Tyler*, No. 293987, 2010 WL 5383529, at *10 (Mich. Ct. App. Dec. 28, 2010)).) In the case Plaintiffs cite, the Michigan Court of Appeals found that the trial court did not err in awarding judgment to plaintiff on its conversion claim where the defendant, an employee of the plaintiff, directed that commissions due to plaintiff be paid directly to defendant's own businesses instead of to his employer. 2010 WL 5383529, at

16

*11. Thus in *Tyler*, the defendant improperly diverted funds that were never rightfully in his possession.

In contrast here, the funds at issue were held in a business account jointly owned by CD Bhakta with Pravin Patel. (*See* CD Bhakta Aff. ¶ 18; Pravin Patel Aff. ¶¶ 35–36.) Pravin Patel's statement that he designated the funds "for use by the Company as capital for operations and/or other needs" (Pravin Patel Aff. ¶ 34) is conclusory and unsupported. There is no evidence that these funds were specifically set aside for a definite purpose. And even if that were the case, it is not clear that an action for conversion would lie. This is not a case where specific funds that should have been placed in a company bank account were redirected to a personal bank account, as in *Tyler*, 2010 WL 5383529, at *10. Here, the money was already in a joint business account to which CD Bhakta rightfully had access. *See also Vidosh v. Trans Audit, Inc.*, No. 306746, 2013 WL 4081106, at *5 (Mich. Ct. App. Aug. 13, 2013) (holding the trial court clearly erred in finding a claim for conversion was not frivolous where there was "no factual basis to conclude that defendant ever had an obligation to return to plaintiff specific money entrusted to his care"); *Warren Tool Co. v. Stephenson*, 161 N.W.2d 133, 147 (Mich. Ct. App. 1968) ("[O]ne who is authorized to collect a note and remit the proceeds may be sued for conversion if he collects but does not remit the proceeds . . .  However, where there is no duty to pay the plaintiff the specific moneys collected, a suit for conversion may not be maintained."). Plaintiffs have not established that there is a genuine issue for trial on their claim for conversion. CD Bhakta is entitled to summary judgment on Count III.[3]

---

[3] In a footnote to their response brief opposing Defendants' motion for summary judgment, Plaintiffs "seek leave to amend their Complaint to add a claim for statutory conversion . . . ." (Resp. at 14 n.1.) A motion to amend the complaint may not be filed by footnote. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *Trustees of Michigan Reg'l Council of Carpenters' Employee Benefits Fund v. H.B. Stubbs Co.*,

**F.  Count IV—Breach of Loan Agreement**

In Count IV of the Complaint, Plaintiffs allege: "To the extent Chandrakant Bhakta is deemed to have borrowed the Funds from Pravin Patel, those Funds were subject to Mr. Patel's agreement to loan money to Mr. Bhakta," and CD Bhakta breached that agreement. (Compl. ¶¶ 61–64.) Defendants initially argued that this claim fails because "the loan of money was made by Ganesh, Inc. to C.D. Bhakta," and "[t]here is simply no contract between Pravin Patel and C.D. Bhakta that would obligate C.D. Bhakta to repay any funds to Pravin Patel." (Mot. Br. at 16.) But after receiving Plaintiffs' response brief, Defendants dropped this argument. In Defendants reply brief, "C.D. Bhakta acknowledges that in light of the Affidavit of Pravin Patel, there is clearly a dispute between C.D. Bhakta and Pravin Patel as to the owner of the bank account from which the Funds were withdrawn, and consequently the identity of the lender in connection with the loan made to C.D. Bhakta. C.D. Bhakta acknowledges that the conflicting affidavits create a sufficient dispute of fact that precludes summary judgment at this time in favor of Mr. Bhakta on Count IV." (Reply at i–ii, n.1) The Court notes further that the other evidence Plaintiffs have proffered, including a handwritten letter that appears to be from CD Bhakta and states, "Pravin, I can pay you off in full with interest" (Resp. Ex. B16 at 1), is sufficient to create issues of fact for trial regarding CD Bhakta's breach of a loan agreement with Pravin Patel. Summary judgment on this count is denied.

---

No. 14-cv-11393, 2014 WL 3543290, at *12 (E.D. Mich. July 17, 2014) ("Trustees' request in their response brief for leave to amend their Complaint . . . is procedurally improper."); *Jung v. Certainteed Corp.*, No. 10-2557, 2011 WL 772907, at *1 (D. Kan. Mar. 1, 2011) ("Generally, a plaintiff's bare request in a response to a motion to dismiss is not a proper vehicle for seeking leave to amend."). But the Court also notes that the case law that requires dismissal of Plaintiffs' common-law conversion claim applies equally to a statutory conversion claim.

### G.  Count V—Breach of Operating Agreement

Count V of the Complaint alleges that "[t]he Operating Agreement specifically requires the Company to provide its members, including the Patels, with certain information," "[t]he Company's managers, the Bhaktas, control the Company's actions," and the Bhaktas' conduct "is in knowing violation of the Operating Agreement." (Compl. ¶¶ 68–70.)

Defendants first argue that CD Bhakta and Pravin Patel are the only possible parties to this claim because "it is beyond dispute that none of Riti, Priti or Kruti Patel, nor Jyotsna Bhakta or Mayur Bhakta are parties to the Operating Agreement." (Mot. Br. at 17.) Plaintiffs do not dispute the latter, but they argue that the Patel daughters and Jyotsna and Mayur Bhakta are proper parties to the claim because they were members of the Company. (Resp. at 17.) The Court has found as a matter of law that Jyotsna and Mayur Bhakta were not members of the Company, so they are entitled to summary judgment on Count V. The Patel daughters may proceed on this claim because their standing is a disputed issue of material fact, as discussed.

As the parties have not provided the Court with a copy of the operating agreement, the Court cannot make any determinations about the duties established by the operating agreement. Assuming that the agreement does create a duty for members to give each other unrestricted access to information about the Company, the evidence before the Court is sufficient to establish a disputed issue of fact regarding Plaintiffs' access to Company information, both before and after the alleged sale in January 2013 of their membership interests (also a disputed fact issue, as discussed below). (*See, e.g.*, Mot. Ex. 4 (May 31, 2013 email from Pravin Patel to CD Bhakta acknowledging receipt of the general ledgers for the Company in response to his May 27, 2013 request for "access to quickbooks," and requesting "[a]s a follow up . . . access to bank accounts reactivated/activated"); Resp. Ex. 7 (May 8, 2012 email from accountant to Pravin Patel stating

19

"With regards to the monthly reports and tax return, however, I have been instructed to send this to CD directly upon our initial meeting when we began working together and furthermore as he is the 'tax matters partner.' From my understanding, he will be forwarding all items to you."); Resp. Ex. 8 (May 30, 2013 email from accountant to Pravin Patel stating, "Mr. CD is the tax matters partner—all inquiries need to go through him.").

According to Plaintiffs' Response, their claim for breach of the operating agreement is also based on Defendants' negotiation of the sale of the Hotel without the knowledge or consent of Plaintiffs. (*See* Resp. at 19.) Plaintiffs say they did not learn of the proposed sale of the Hotel until May 2013 (Pravin Patel Aff. ¶ 30; *see also* Mot. Ex. 13), although the Company entered an agreement to sell the Hotel on January 18, 2013 (Mot. Br. at 5; Resp. Ex. C, Sale-Purchase Agreement at Pg ID 613–14).

Defendants argue that Plaintiffs knew the Company had been trying to sell the Hotel since at least 2010. (*See* Mot. Br. at 3.) They point to a December 2011 email in which Pravin Patel was sent a link to information about the Hotel on a broker's web site. (*See* Mot. Ex. 11.) They also argue that any claim based on alleged failure to involve the Plaintiffs in the sale of the Hotel was vitiated by the Plaintiffs' ultimate consent to the sale. (*See* Mot. Br. at 18.) But Plaintiffs consented on condition that the proceeds be placed in escrow pending a determination of ongoing disputes, and the consent document expressly stated that "nothing contained in this Unanimous Written Consent . . . shall be deemed a waiver or forfeiture of any claims or defenses related  to such disputes." (Mot. Ex. 5.) And even if Plaintiffs were fully in the loop on efforts to sell the Hotel as of December 2011, that does not mean they knew about the negotiations that led to a purchase agreement more than a year later, in January 2013. Thus there are disputed fact issues as to what Plaintiffs knew about the sale of the Hotel and when, assuming Defendants had

20

an obligation to inform Plaintiffs about the sale (which depends on the terms of the operating agreement, which the parties have not provided).

Summary judgment on Count V is denied as to CD Bhakta.

### H.  Count VI—Violation of Mich. Comp. Laws § 450.4503

Count VI of the Complaint alleges a violation of Mich. Comp. Laws § 450.4503, which requires that certain information be provided upon the request of a member of a limited liability company. Defendants argue that this claim must be dismissed to the extent asserted by Riti, Priti, and Kruti Patel "since they are not members in the Company." (Mot. Br. at 19.) As discussed above, whether the Patel daughters may assert claims as members of the Company is a disputed issue of fact that is not appropriate for summary judgment.

Defendants also argue that the Company is an indispensable party. (*Id.*) In response, Plaintiffs cite a case in which a federal court allowed a claim between members under § 450.4503 to proceed without joining the company. (Resp. at 20, citing *Weiner v. Weiner*, No. 06-cv-642, 2008 WL 746960 (W.D. Mich. Mar. 18, 2008).) The court in that case did not directly address whether the company was an indispensable party. But in addressing the defendant's argument that "an accounting is an equitable remedy that should be used only in extraordinary circumstances after liability has been shown, and that an accounting should not be used as a substitute for discovery," the court reasoned:

> Under Michigan law, a suit for an accounting invokes a court's equitable powers. . . . That is the case even when the request is pursuant to statute. For example, in discussing an accounting under section 22 of the Michigan Uniform Partnership Act, M.C.L. § 449.22, the Michigan Court of Appeals stated: "Accounting in equity is an appropriate remedy as between partners . . . ."

*Weiner*, 2008 WL 746960, at *8 (quoting *Bellware v. Wolffis*, 397 N.W.2d 861, 864 (Mich. Ct. App. 1986) (per curiam)). In the case cited, *Bellware*, the Michigan Court of Appeals reversed

21

the trial court's holding on a motion for accelerated judgment that an individual partner has no right to an accounting. 397 N.W.2d at 864. The court disagreed, noting that Michigan law provides individual partners with the right to a formal accounting. *Id.* The statute the court relied upon gives "[a]ny partner . . . the right to a formal account as to partnership affairs," without specifying whether the right is against the partnership or the other partners. The Limited Liability Company Act similarly provides that "[u]pon reasonable request, a member may obtain true and full information regarding the current state of a limited liability company's financial condition." Mich. Comp. Laws § 450.4503(2). This is in contrast to the first part of the statute, which says "[u]pon written request of a member, a limited liability company shall send a copy of its most recent annual financial statement . . . ." Mich. Comp. Laws § 450.4503(1).

Defendants do not cite any cases in which a court has dismissed a claim under § 450.4503 because it was brought against a member without joining the company, and the Court has not found any such case in its own research. On the contrary, the Court found another case in which a claim under § 450.4503 was allowed to proceed against a member without joinder of the company. *See Gordon v. Urbahns*, No. 12-cv-13724, 2013 WL 1688854 (E.D. Mich. Apr. 18, 2013), *on reconsideration in part*, 2013 WL 4718341 (E.D. Mich. Sept. 3, 2013). The plain language of the statute does not indicate that it should be thus limited, and Michigan case law regarding a similar provision in the Partnership Act suggests the claim should be allowed to proceed. Defendants' motion will therefore be denied as to Count VI, except as to Jyotsna Bhakta (who the Court has found as a matter of law is not a member or manager of the Company).[4]

---

[4] The Court notes that "Michigan courts hold that an accounting in equity is unnecessary where discovery is sufficient to determine the amounts at issue." *Weiner*, 2008 WL 746960, at *8 (citing *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 339 F. Supp. 2d 944, 974 (W.D.

## I.   Count VII—Accounting

In Count VII, Plaintiffs request an accounting of the Company and the Hotel, alleging that "[t]he Bhaktas have a duty to account for, and return to the Patels, any and all unreasonable salaries, inappropriate expense reimbursements, misappropriated or misused Company funds or any other monies that should have rightfully been made available to the Patels as 50% owners of the Company." (Compl. ¶ 77.) In their motion, Defendants summarize an argument that seems to have been omitted from their brief in support of the motion. They argue that Count VII must be dismissed because "(a) Plaintiffs fail to identify any assets of Plaintiffs over which Defendants have exercised dominion or control, let alone wrongful dominion or control; (b) there is no genuine dispute that none of [the] Defendants have exercised any dominion or control over assets of any of the Plaintiffs . . . ; and (c) Jyotsna Bhakta and Mayur Bhakta did not undertake and there is no source or authority to impose upon Jyotsna Bhakta or Mayur Bhakta any duty 'to account for monies paid to them or their relatives[.]'" (Mot. at 8–9.)

The Court disagrees with this argument, to the extent that Defendants made it. Plaintiffs identified the assets of Plaintiffs over which Defendants exercised dominion or control: the Company and the Hotel. There is a genuine dispute regarding the extent to which Defendants CD Bhakta and Mayur Bhakta exercised dominion or control over the Company. And § 450.4503 establishes that a member of an LLC has the right to an accounting, as discussed above. As to Jyotsna Bhakta, summary judgment is granted because the Court found as a matter of law that

---

Mich. 2004), and *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972) ("An accounting is a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another. It is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate."); *see also Boyd v. Nelson Credit Centers, Inc.*, 348 N.W.2d 25, 27 (Mich. Ct. App. 1984) ("An accounting is unnecessary where discovery is sufficient to determine the amounts at issue."). But Defendants have not argued in this motion that the claim is mooted by the availability of information through discovery in this litigation.

she was not a member or manager of the Company. But as to CD Bhakta and Mayur Bhakta, the motion is denied.

### J.   Count VIII—Unjust Enrichment

To sustain a claim for unjust enrichment under Michigan law, a plaintiff must show that the defendant received a benefit from plaintiff and that an inequity resulted to plaintiff as a consequence of the defendant's retention of that benefit. *Liggett Rest. Grp., Inc. v. City of Pontiac*, 676 N.W.2d 633, 639 (Mich. Ct. App. 2003). Count VIII of the Complaint alleges that Defendants "had access to the bank accounts and income of the Company and Hotel and paid themselves and/or their relatives salaries and reimbursed expenses," "steadfastly refused all requests by the Patels to account for these monies and/or justify their expenditures of Company assets," and "Chandrakant Bhakta has admitted to taking in excess of one million dollars owned by Pravin Patel for his own use and benefit." (Compl. ¶¶ 79–81.)

Defendants argue that "it is beyond reasonable dispute that none of Plaintiffs actually conferred any benefit upon any of the Defendants," citing conclusory affidavit statements from CD, Mayur, and Jyotsna Bhakta to that effect. (Mot. Br. at 20.) Plaintiffs respond that because "CD Bhakta disputes the existence of a valid loan agreement," Plaintiffs appropriately "pursue an alternate claim that CD Bhakta was unjustly enriched by his theft and personal use of Mr. Patel's Funds." (Resp. at 21.) They also argue that "as managers of the Company and Hotel, the Bhaktas had control of the bank accounts and income," and Plaintiffs believe they "were paid improper salaries and expense reimbursements." (*Id.*) They appear to argue that Defendants are withholding documents relating to this allegation. In the Reply, Defendants point out that Plaintiffs have not provided an affidavit showing that further discovery is needed, as required by Federal Rule of Civil Procedure 56(d). (Reply at 6.)

24

Plaintiffs have established that there are material issues of fact in dispute regarding CD Bhakta's alleged misappropriation or failure to repay Pravin Patel's money, as discussed above, and this is sufficient to maintain the claim for unjust enrichment against CD Bhakta. But as to Jyotsna and Mayur Bhakta, Plaintiffs have not come forward with specific facts showing that there is a genuine issue for trial regarding any unjust enrichment. Conclusory remarks such as "improper salaries and expense reimbursements" are insufficient. If Plaintiffs are unable to make a more detailed showing because of unresolved discovery disputes, then they must provide an affidavit to that effect. *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (discussing the affidavit requirement in Rule 56(f), now Rule 56(d), and stating: "The importance of complying with Rule 56(f) cannot be overemphasized.").[5] On this record, summary judgment is granted to Jyotsna and Mayur Bhakta on Count VIII.

Defendants also argue that Plaintiffs' claim should be dismissed because Plaintiffs have objected to their request to produce documents to support this claim. (Mot. Br. at 20–21.) Defendants do not provide any information about attempts to narrow this discovery dispute, they have not filed a motion to compel, and they have cited no authority to support the imposition of the drastic sanction they seek in these circumstances. Although a court may dismiss a claim for failure to comply with a court order, it is harsh sanction that is not appropriate "absent a clear record of delay or contumacious conduct." *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997). And here, there is no court order with which Plaintiffs failed to comply. Defendants are premature in seeking dismissal on this ground.

---

[5] At the hearing, Plaintiffs pointed to Pravin Patel's affidavit to support their need for more discovery. As discussed below, Pravin Patel's statements support the need for more discovery regarding negotiations to sell the Hotel. But his statements do not relate to misappropriation of Company funds.

**K.  CD Bhakta's Counterclaim for Breach of Contract**

CD Bhakta argues that he is entitled to partial summary judgment on his counterclaim for breach of contract. The counterclaim is based on the offer he made to purchase Pravin Patel's share in the Company, which he says Pravin Patel accepted, thereby effecting the sale. He maintains that Pravin Patel breached that contract of sale by "continu[ing] to assert a membership interest and not only the right to withhold consent to the proposed sale of the Hotel by the Company, but actively s[eeking] to interfere with the proposed sale." (Mot. Br. at 22.) He asks this Court to declare that, "by C.D. Bhakta's January 7, 2013 offer and Pravin Patel's January 14, 2013 written acceptance, a binding contract was formed, the membership interests of Pravin Patel were sold to C.D. Bhakta, and that as of January 14, 2013, Pravin Patel no longer held any membership interest in the Company." (Mot. Br. at 23.) Pravin Patel argues in response that whether a contract was formed is a disputed issue of fact (without citation to case law), and regardless, no contract could exist because of CD Bhakta's fraud (based on his failure to disclose the impending sale of the Hotel), as to which Pravin Patel needs discovery. (Resp. at 23–25.)

CD Bhakta made the following proposal to Pravin Patel: "For the transfer of the Patel 50% ownership unit to CD Bhakta a sum of $750,000 would be paid to the Patels in proportion to their ownership interests within 3 years, but not later than the closing of the sale of the hotel property  . . . ." (Mot. Ex. 1E; Resp. Ex. B11.) It is undisputed that Pravin Patel responded to CD Bhakta's offer by writing: "The purpose of this letter is to let you know that I accept the proposal on the basis that you will purchase my family's current ownership interest in Motor City Hospitality LLC as provided in your proposal. . . . Please have papers prepared and submit them to me so that we can formalize this agreement and complete the share sale transaction and transfer of shares." (Mot. Ex. 1F; Resp. Ex. B12.)

26

But the parties do not agree that this letter constituted acceptance of an offer to purchase. Pravin Patel says he believed he was "indicating . . . willingness to discuss the sale" in response to CD Bhakta's email, which he understood to be "an invitation to provide a formal proposal," not an offer that, if accepted, would effect the sale. (Pravin Patel Aff. ¶¶ 22, 24.) He supports his account with two emails. The first email he sent to CD Bhakta on January 19, five days after the alleged acceptance, saying: "I signed the below with the understanding that you would share a proposal in writing to be REVIEWED. There are no terms in the signed [attachment] and for us to have a valid agreement you need to provide those so they can be reviewed, agreed to, and signed. . . . Until we agree to specific terms outlined in a proper contract, I will maintain my rights as an owner." (Resp. Ex. T.) The second email was sent by CD Bhakta three days after Pravin Patel's, on January 22, saying: "We need to meet in person to clarify any misunderstanding regarding our businesses and the proposal. . . . If you do not want to meet and make a decision, then you will leave me no option but to proceed with your decision in the signed agreement . . . ." (Resp. Ex. B13.)

CD Bhakta does not appear to dispute that these emails are genuine. But he contends that Pravin Patel accepted CD Bhakta's offer to purchase his shares and only later changed his mind, wanting to purchase CD Bhakta's shares instead. (CD Bhakta Aff. ¶¶ 29–30.) At the hearing, Defendants' counsel proffered an email with the subject line "Re: Acceptance Letter," in which Pravin Patel told CD Bhakta: "Please reverse this letter to your name sign and email to me or fax . . . ." The email was sent on January 19 at 12:53 PM—after CD Bhakta's 9:17 AM email stating, "Attached are the two signed documents you requested," and before Pravin Patel's email at 3:19 PM in which he said "I signed the below with the understanding that you would share a proposal in writing to be REVIEWED." (*See* Resp. Ex. T.)

27

Under Michigan law, "[t]here are five elements of a valid contract: '(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.'" *Calhoun Cnty. v. Blue Cross Blue Shield Michigan*, 824 N.W.2d 202, 209 (Mich. App. Ct. 2012) (quoting *Hess v. Cannon Twp.*, 265 Mich. App. 582, 592, 696 N.W.2d 742 (Mich. Ct. App. 2005)), *appeal denied*, 823 N.W.2d 603 (Mich. 2012). "[T]he parties to a contract must have 'a meeting of the minds on all essential terms of a contract.'" *Id.* (quoting *Burkhardt v. Bailey*, 680 N.W.2d 453, 463 (Mich. Ct. App. 2004)). Whether there was a meeting of the minds "'is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'" *Id.* (quoting *Stanton v. Dachille*, 463 N.W.2d 479, 483 (Mich. Ct. App. 1990)).

Here, the essential terms appear to have been included in CD Bhakta's offer. (*See* Mot. Ex. 1E; Resp. Ex. B11.) Pravin Patel contends there was no meeting of the minds because he only intended to indicate willingness to negotiate. Yet Pravin Patel's email said, "[t]he purpose of this letter is to let you know that I accept the proposal." (Mot. Ex. 1F; Resp. Ex. B12.) It is hard to see how a reasonable finder of fact would not view this as the formation of a contract. On the other hand, there is no clear indication that the Patel daughters agreed to sell or authorized Pravin Patel to sell their interests, which, the Court has found, may have been membership interests.

The Court also finds there are issues of material fact for trial on Plaintiffs' fraud defense. Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party. *Samuel D. Begola Servs. v. Wild Bros.*, 534 N.W.2d 217, 219 (Mich. Ct. App. 1995); *see also City of Flint v. OK Indus.*, No. 271624, 2007 Mich. App. LEXIS 979, at *3–4 (Mich. Ct. App. Apr. 10, 2007). Plaintiffs argue that CD Bhakta's failure to disclose the

28

negotiations for and impending sale of the Hotel, despite fiduciary obligations, constitute "silent fraud" that renders the contract voidable. (Resp. at 23–24.)

Plaintiffs argued that more discovery is needed on this defense. (Resp. at 25.) Federal Rule of Civil Procedure 56(d) provides that a motion for summary judgment may be denied where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Plaintiffs point to the affidavit of Pravin Patel, which states, "for the Patels to prove our claims and protect our interests as members of the Company, including, without limitation, the fiduciary duties we were owed as members with the Bhaktas, we must be provided access to all communications, discussions, or negotiations with VIC regarding the sale of the Hotel or otherwise," and "[t]o date, the Bhaktas have not provided any of this information despite our discovery requests for them to do so." (Pravin Patel Aff. ¶¶ 32–33.) In addition, at the hearing, Plaintiffs proffered an email thread, recently obtained by subpoena from a third party, in which it appears that CD Bhakta was aware in November 2012 of a letter of intent to purchase the Hotel for $12.5 million. Plaintiffs have sufficiently established a need for further investigation of their fraud defense to formation of a contract to sell their shares in the Company. *See Harvard Drug Group, LLC, v. Linehan*, No. 08-13617, 2009 U.S. Dist. LEXIS 32802, at *7–8 (E.D. Mich. Apr. 17, 2009) (granting motion for discovery regarding fraud-in-the-inducement defense before motion for summary judgment on the contract could be decided).

The Court is not persuaded by CD Bhakta's argument that Pravin Patel's "claim of alleged 'silent fraud' lacks the specificity required by Rule 9(b)." (Reply at 7.) Rule 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity," but that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."

*Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001) (internal quotation marks omitted). Pravin Patel's Answer to CD Bhakta's Counterclaim asserted fraud as an affirmative defense and incorporated by reference the allegations of the Complaint. (Dkt. 7 at ¶ 9.) In a section of the Complaint titled "The Bhaktas' Scheme to Secretly Sell the Hotel and Attempt to Defraud the Patels," Plaintiffs allege:

> At no time during Chandrakant Bhakta's efforts to persuade the Patels to give up their interests in the Company did he inform the Patels of his efforts to sell the Company's sole asset, the Hotel, or of the Bhaktas' apparent deal to sell the Hotel for $12.5 million while, at the same time, pressuring the Patels to quickly sell their collective 50% interest in the Company for $750,000.00 (a sum that, even net of the Hotel's existing debt, was substantially less than the Patel's rightful share of the multi-million dollar sale proceeds).

(Compl. ¶ 36.) This and associated allegations are sufficient to satisfy the particularity requirement of Rule 9(b).

Summary judgment on CD Bhakta's counterclaim is denied.[6]

## IV. CONCLUSION AND ORDER

The Court finds as a matter of law that Jyotsna and Mayur Bhakta were not members of the Company and Jyotsna Bhakta was not a manager of the Company. Summary judgment is therefore granted to Jyotsna Bhakta on Count I, II, V, VI, VII, and VIII, and to Mayur Bhakta on Counts V and VIII. The Court also grants summary judgment to CD Bhakta on the claim for conversion in Count III. Summary judgment is denied on all other counts and on CD Bhakta's

---

[6] Defendants make a few brief and conclusory challenges to Pravin Patel's standing to bring some of his claims, based on his sale of his share of the company. (*See* Mot. Br. at iii, 10, 20.) Because the Court finds the effectiveness of the sale is a disputed issue of material fact for trial, these arguments, to the extent they are made, fail.

counterclaim. Defendants' Motion for Summary Judgment (Dkt. 12) is DENIED IN PART AND

GRANTED IN PART.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  October 8, 2014


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 8, 2014.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson